UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CHU,<br><br>   Plaintiff,<br><br>  v.<br><br>FAY SERVICING, LLC, et al.,<br><br>   Defendants. | Case No. 16-cv-04530-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

Plaintiff Stephanie Chu brings this suit against Defendants Fay Servicing, LLC ("Fay") and Barrett Daffin Frapper Treder & Weiss, LLP ("Barrett"), alleging violations of California Civil Code § 2923.6, California's Unfair Competition Law ("UCL"), and the Real Estate Settlement Procedures Act ("RESPA"), as well as negligence. (Compl., Dkt. No. 1, Exh. 2.) Pending before the Court is Defendants' motion to dismiss the complaint. (Defs.' Mot., Dkt. No. 10.) The Court deemed the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and vacated the hearing set for October 6, 2016. Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motion, for the reasons set forth below.

## I. BACKGROUND

### A. Factual background

In 2003, Plaintiff refinanced her property with Washington Mutual in the amount of $457,500. (Compl. ¶ 18.) In 2006, Plaintiff refinanced the 2003 note with Washington Mutual in the amount of $547,500. (Compl. ¶ 19, Exh. A.) At some point, the deed of trust was transferred to Chase. Due to the economic downturn, Plaintiff was unable to make her payments sometime around the end of 2011. (Compl. ¶ 20.) She contacted Chase to seek a loan modification, and was informed that she would have to default on her loan before she would qualify for a loan

modification. (Compl. ¶ 21.) Relying on this information, Plaintiff defaulted on the note in 2012. (Compl. ¶ 22.) On May 22, 2012, Barrett recorded a Notice of Default. (Compl. ¶ 23, Exh. B.)

Starting in 2013, Plaintiff began submitting loan modification applications. (Compl. ¶ 26.) Plaintiff alleges that Chase would repeatedly require that the same documents be submitted because Chase either lost the documents or deemed the documents "expired." (*Id.*) In November 2015, Chase informed Plaintiff that Fay would be the new servicer, and that she was to direct all further correspondence regarding a loan modification to Fay. (Compl. ¶ 27.) On November 10, 2015, Barrett recorded a Notice of Trustee's Sale on Plaintiff's property. (Compl. ¶ 28, Exh. C.)

In December 2015, Plaintiff began corresponding with Carlos, her single point of contact ("SPOC"), to begin a "completely new Request for Mortgage Assistance." (Compl. ¶ 29.) Also in 2015, Plaintiff "on several occasions" requested a detailing accounting, seeking information about the unpaid balance, accrued interest, unpaid interest, daily interest charges, and other fees, costs, and expenses.[1] (Compl. ¶ 30.) Both Chase and Fay failed to respond and refused to provide an accounting. (*Id.*)

In January 2016, Plaintiff faxed her Request for Mortgage Assistance to Fay, also submitting the application to her local Chase branch to fax to Fay. (Compl. ¶ 31.) When Plaintiff inquired about her application, however, Fay stated they had not received any faxes. (Compl. ¶ 32.) On January 29, 2016, Plaintiff contacted Carlos, who informed her that Fay had received the application but that additional documents were needed. (Compl. ¶ 34.) Because the trustee's sale was set for that same day, Carlos stated that he could not accept additional documents because the trustee sale was too close. (Compl. ¶ 35.) Plaintiff has not since received a written determination to her January 2016 application, although she alleges that she complied with Fay's request for submitting additional supporting documentation. (Compl. ¶ 37.)

### B. Procedural background

Plaintiff filed the instant suit on July 13, 2016. Defendants then timely removed the case on August 10, 2016 on the basis of federal question and diversity jurisdiction. (Not. of Removal

---

[1] Of note, the Complaint does not state that Plaintiff actually requested this information from Fay. (*See* Compl. ¶ 30.)

¶¶ 11, 12, Dkt. No. 1.) Defendants filed their motion to dismiss on August 12, 2016, along with a request for judicial notice. (Defs.' Mot., Dkt. No. 10; Request for Judicial Notice ("RJN"), Dkt. No. 11.) Plaintiff filed her opposition on August 26, 2016. (Pl.'s Opp'n, Dkt. No. 17.) Plaintiff did not file an opposition to Defendants' request for judicial notice. Defendants filed their reply on September 2, 2016. (Defs.' Reply, Dkt. No. 18.)

## II.   LEGAL STANDARD

### A.   Request for judicial notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B.   Motion to dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

1  will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2  "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

#### A.   Request for judicial notice

Defendants ask that this Court take judicial notice of: (1) the Substitution of Trustee recorded on June 25, 2012, (2) the Notice of Trustee's Sale recorded on August 24, 2012, (3) the Notice of Trustee's Sale recorded on April 21, 2014, (4) the Notice of Trustee's Sale recorded on September 2, 2014, (5) the Corporate Assignment of the Deed of Trust recorded on November 20, 2014, (6) the Notice of Trustee's Sale recorded on March 31, 2015, (7) the Corporate Assignment of the Deed of Trust recorded on November 17, 2015, (8) the court docket for Plaintiff's November 13, 2012 Chapter 13 bankruptcy petition, (9) the court docket for Plaintiff's January 29, 2016 Chapter 13 bankruptcy petition, and (10) the court docket for Plaintiff's March 29, 2016 Chapter 13 bankruptcy petition.

The Court takes judicial notice of the dockets for the bankruptcy proceedings (Exhibits 8, 9, and 10), as judicial notice may be taken of court records. *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119 ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases").

4

As for the remaining documents, Plaintiff did not file an opposition to Defendants' request for judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits. The Substitution of Trustee (Exhibit 1), Notices of Trustee's Sale (Exhibits 2, 3, 4, and 6), and the Corporate Assignments of the Deed of Trust (Exhibits 5 and 7) are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Accordingly, the Court GRANTS Defendants' request for judicial notice.

**B.   Motion to dismiss**

    **i.   State claims**

        a.   Preemption

Defendants argue that Plaintiff's state claims are preempted by the Home Owner's Loan Act ("HOLA") because Plaintiff's loan originated with Washington Mutual, a federal savings bank. (Defs.' Mot. at 3.) HOLA preempts "state laws purporting to impose requirements" with respect to "[p]rocessing, origination, servicing, sales or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). The courts have split on whether HOLA preemption is applicable where the loan originator was subject to HOLA, but the successor party is not. *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 991 (N.D. Cal. 2014). The majority has determined that "'the status of the originator of the loan determines the applicability of HOLA to a particular loan.'" *Id.* (quoting *Rijhwani v. Wells Fargo Home Mortg., Inc.*, C 13-5881 LB, 2014 WL 890016, at *6 (N.D. Cal. Mar. 3, 2014). A minority of courts, including this Court, have "'questioned the logic of allowing a successor party . . . to assert HOLA preemption, especially when the wrongful conduct alleged was done after the federal savings association or bank ceased to exist.'" *Id.* (quoting *Rijhwani*, 2014 WL 890016, at *7). These courts "'have applied HOLA preemption only to conduct occurring before the loan changed hands from the federal savings bank to the entity not governed by HOLA.'" *Id.* at 991-92 (quoting *Rijhwani*, 2014 WL 890016, at 7). In other words, while a successor entity "does inherit the liabilities and possible defenses that [the loan originator] could raise about its own conduct, [the successor entity] cannot violate state laws when servicing loans that were originated by an entity regulated by HOLA." *Id.* at 995. In

so concluding, this Court explained:

> If Wells Fargo's position that HOLA preemption shields its own post-acquisition conduct were adopted, Wells Fargo would have license to violate the terms of the [National Mortgage Settlement], of which it was a signatory, with impunity and to oust borrowers from their homes without any private recourse, so long as their loans originated with a federal savings bank. To find that some homeowners cannot avail themselves of HBOR protection based solely on their original lender, and without regard to the entity engaging in the otherwise illegal conduct, is arbitrary at best, and, at worst, could result in a gross miscarriage of justice, while also running afoul of one of the original purposes of HOLA enactment: consumer protection.

*Id.* at 995-96.

Applying this principle, the Court concludes that HOLA preemption does not apply in this case. Plaintiff does not challenge actions by Washington Mutual, but by Fay, which Defendants do not suggest is a federal savings bank or federal savings association. (*See* Defs.' Mot. at 3.) Plaintiff's state claims are not preempted.

### b. Civil Code § 2923.6 claim

Plaintiff's first cause of action alleges a violation of California Civil Code § 2923.6, which prohibits dual tracking. Section 2923.6 provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending . . . until . . . the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired.

The statute further provides that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error." Cal. Civ. Code § 2923.6(d).

Defendants contend that Plaintiff's claim is not ripe because Plaintiff does not allege that her loan modification application was complete. (Defs.' Mot. at 5-6.) Specifically, Plaintiff alleges that in January 2016, she submitted a loan modification application to Fay. (Compl. ¶¶ 43, 44.) On January 29, 2016, she contacted her SPOC, who informed her that they required

6

additional documents, but that he could not accept the additional documents because the trustee sale was scheduled for that same day. (Compl. ¶¶ 45-47.) Thus, Plaintiff alleges that "FAY intentionally *prevented* Plaintiff from submitting a complete loan modification because they refused to accept their requested additional documents from Plaintiff." (Compl. ¶ 48 (emphasis added).) Plaintiff then appears to contradict herself because she goes on to state that Fay failed to provide her with a written determination to her January 2016 loan modification "even though Plaintiff complied with all of FAY's request for submitting additional supporting documentation." (Compl. ¶ 49.)

The Court finds that Plaintiff's complaint could be read as stating that she was prevented from completing her application on January 29, 2016, but that she was later permitted to provide the requested documents. At this point, however, Plaintiff fails to clearly plead that the application as submitted was complete as required by statute, such as factual allegations of when she submitted the additional supporting documentation and when Fay accepted the documents and deemed the application complete. As such, Plaintiff's § 2923.6 cause of action is dismissed with leave to amend to plead that the application was completed.[2]

### c. Negligence

Plaintiff's second cause of action is for negligence. Under California law, to prove negligence a plaintiff must plead and prove: (1) defendant's legal duty of care toward plaintiff, (2)

---

[2] In the alternative, Defendants also argue that the § 2923.6 claim is procedurally defective because this section only applies to mortgage servicers that have foreclosed on more than 175 residential real properties with four or fewer dwelling units. In support, Defendants cite *Cordero v. U.S. Bank, N.A.*, which held that the plaintiff's failure to allege these facts were insufficient to establish that § 2923.6 applied. No. 14CV1709-MMA (BLM), 2014 WL 4658757, at *5 (S.D. Cal. Sept. 17, 2014). *Cordero* has never been cited by any other court for this proposition, and the Court declines to do so now. Moreover, other courts have found that both § 2923.6 and § 2924.18 (which applies to mortgage servicers that have foreclosed on 175 or fewer properties) have the same "gist . . . while a borrower's complete application for a first lien loan modification is pending, the servicer may not record a notice of default, notice of trustee's sale, or conduct a trustee's sale." *Rockridge Trust v. Wells Fargo*, Case No. 13-cv-1457-JCS, 2014 WL 688124, at *21 (N.D. Cal. Feb. 19, 2014). Thus, in *Rockridge Trust*, although it was not clear from the complaint what type of servicer the defendant was and which of the two provisions applied, the Court did not dismiss on that ground but "proceed[ed] as if both statutes are relevant." *Id.* Here, because under either provision Plaintiff would need to show that the application was complete, Plaintiff's cause of action is subject to dismissal.

7

defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages. *Palm v. United States*, 835 F. Supp. 512, 520 (N.D. Cal. 1993). Generally, lenders do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991); *see also Rijhwani*, 2014 WL 890016, at *14.

Plaintiff alleges that Defendant Fay had a duty to exercise reasonable care in processing and reviewing Plaintiff's application for a loan modification prior to recording a Notice of Sale and proceeding with non-judicial foreclosure. (Compl. ¶ 53.) Fay then breached this duty by failing to review Plaintiff's loan modification application in good faith and in a timely manner, preventing Plaintiff from submitting a complete loan modification application, and continuing foreclosure proceedings. (Compl. ¶ 54.)

In their motion to dismiss, Defendants argue that it does not owe Plaintiff a duty as to the loan modification review. (Defs.' Mot. at 8-9.) Furthermore, Defendants contend that Plaintiff has failed to allege any breach, such as how there was any negligent review of Plaintiff's loan modification application. (*Id.* at 9.) Defendants also argue that Plaintiff failed to allege any damages resulting from the negligent review. (*Id.* at 10.)

In response, Plaintiff argues that once a lender has agreed to conduct a loan modification, it owes the borrower a duty to use reasonable care when processing the loan modification application. (Plf.'s Opp'n at 5-6.) Federal district courts in California are divided on when lenders owe a duty of care to borrowers in the context of the submission of loan modification applications and negotiations related to loan modifications. *See Penermon*, 47 F. Supp. 3d at 1001; *Rijhwani*, 2014 WL 890016, at *15-16. Once Fay provided Plaintiff with a loan modification application and asked her to submit supporting documentation, and she did so, "Defendant undertook the activity of processing Plaintiff's loan modification request. Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task." *Penermon*, 47 F. Supp. 3d at 1001 (quoting *Garcia v. Ocwen Loan Servicing, LLC*, C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010); *see also Rijhwani*, 2014 WL 890016, at *16. In order to determine

"whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Nymark*, 231 Cal. App. 3d at 1098 (internal quotations and citations omitted).

In the processing of a loan modification application, the transaction is unquestionably intended to affect Plaintiff, as the decision would determine whether or not she could keep her home. *Penermon*, 47 F. Supp. 3d at 1002. Second, the potential harm from mishandling the application is readily foreseeable as it is the loss of an opportunity to keep her home. *Id.* Third, the injury to Plaintiff is certain, as Plaintiff could lose the opportunity to potentially modify her loan and her home could be sold. *Id.* Fourth, there would be a close connection between Fay's conduct of allegedly not processing the application and the pending foreclosure of Plaintiffs' home. *Id.* Fifth, whether or not moral blame attaches to Fay's conduct is unclear at this state of the litigation, but the uncertainty is insufficient to find that there was no duty of care. *Id.*; *see also Garcia,* 2010 WL 1881098, at *3. Sixth, California's enactment of HBOR and the federal government's home owner assistance programs, such as HAMP, shows the existence of the public policy of preventing future harm to borrowers caught in the foreclosure crisis.

Here, however, Plaintiff does not allege facts to support her contention that Fay breached the duty of care. Again, the operative complaint contains contrary allegations as to whether Plaintiff even completed her loan modification application or was prevented from completing her application. (Compl. ¶¶ 35, 37.) Without specific facts, Defendants cannot determine what the breach was and whether it is actionable. Further, Plaintiff has failed to specify what damages resulted from Fay's negligence aside from her general claim that she was deprived an opportunity to obtain a loan modification and avoid foreclosure. *Compare with Cavender v. Wells Fargo*, Case No. 16-cv-703-KAW, 2016 WL 4608234, at *8 (N.D. Cal. Sept. 6, 2016). Accordingly, Plaintiff's negligence cause of action is dismissed. Plaintiff is, however, granted leave to amend to

clarify the basis of her negligence claim and include specific facts as to what the breach was and how it caused her damage.

### d. Unfair Competition Law ("UCL")

Plaintiff's third cause of action is for violation of California's Unfair Competition Law, California Business & Professions Code § 17200, *et seq.* Section 17200 concerns unfair competition and prohibited activities and states that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). In order to state a claim under the UCL, Plaintiff must identify an underlying statute that Defendants violated. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated another law"). A business practice is unlawful in violation of the UCL if it violates another state or federal law; the UCL "borrowers" violations of other laws and treats them as independently actionable. *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

Plaintiff alleges that Defendants' violation of § 2923.6 and negligent actions constitute unlawful, unfair, and fraudulent activity. (Compl. ¶¶ 63-65.)

Defendants make two primary arguments. First, Defendants argue that Plaintiff's UCL claim fails because she lacks standing as she has no damages caused by the challenged activities. (Defs.' Mot. at 12.) Following the passage of Proposition 64, "a private person has standing to sue only if he or she 'has suffered [an] injury in fact and has lost money or property as a result of such unfair competition.'" *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006) (quoting Cal. Bus. & Prof. Code § 17204). Plaintiff responds that she has suffered harm in the form of wrongful default fees and costs, as well as the expense of the instant litigation. (Plf.'s Opp'n at 7.) The Court concludes that as alleged, Plaintiff fails to allege sufficient facts demonstrating standing. Plaintiff has not alleged causation between the default fees and costs and Defendants' actions, as Plaintiff admits in her complaint that she defaulted in 2012, nearly four years prior to Fay's alleged failure to process her January 2016 loan modification application.

10

(Compl. ¶¶ 22, 31-36.)  Plaintiff does not explain how Defendants' allegedly wrongful actions are connected to the default fees and costs.  Further, Plaintiff cannot rely on the expense of the instant litigation to establish damages for purposes of her UCL claim.  Courts in this district have rejected such an argument, reasoning that "[u]nder Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit." *Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011); *see also Khan v. K2 Pure Solutions, LP*, Case No. 12-cv-5526-WHO, 2013 WL 4734006, at *6 (N.D. Cal. Sept. 3, 2013) ("attorney's fees incurred merely by bringing this case are insufficient to establish the . . . injury necessary under the UCL"); *Berkeley v. Wells Fargo Bank*, Case No. 15-cv-749-JSC, 2015 WL 6126815, at *15, (N.D. Cal. Oct. 19, 2015) ("attorneys' fees are insufficient to state a UCL claim").  Thus, Plaintiff's UCL case must be dismissed for failure to plead harm resulting from the challenged actions in this case.

Second, Defendants argue that Plaintiff's UCL claim fails because it is dependent on Plaintiff's first two causes of action, which are deficiently pled.  (Defs.' Mot. at 11-12.)  The Court agrees.  Plaintiff's UCL claim is based solely on the § 2923.6 violation and her negligence claims, both of which were inadequately pled as discussed above.  (Compl. ¶¶ 63-65.)  The Court therefore dismisses Plaintiff's UCL cause of action, with leave to amend.

### ii. Accounting and Violation of the Real Estate Settlement Procedures Act ("RESPA")

Plaintiff's final cause of action is for accounting and violation of RESPA.  RESPA places a duty on loan servicers to respond to borrower requests.  As an initial matter, Plaintiff's RESPA claim against Defendant Barrett fails because Plaintiff does not allege that Barrett is a loan servicer; Plaintiff only alleges that Defendant Fay is her loan servicer.  (Compl. ¶ 27.)  "[O]nly servicers of loans are subject to § 2605(e)'s duty to respond" to letters relating to disputes regarding servicing.  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012).  Plaintiff also does not allege that she requested any information from Barrett, focusing solely on the failure of Chase and Fay to respond to Plaintiff's request for accounting.  (Compl. ¶ 71.)  Therefore, Plaintiff's RESPA claim against Defendant Barrett is dismissed with leave to amend.

As for Fay, Plaintiff alleges that she requested a detailed accounting calculation that Fay

11

failed to act upon. (Compl. ¶¶ 30, 71.) Defendants argue that this cause of action should be dismissed because Plaintiff likely obtained such information during the bankruptcy proceedings and from the Notice of Trustee's Sale. (Defs.' Mot. at 17.) Further, Defendants contend that Plaintiff has failed to allege any damages suffered as a result of Fay's failure to provide an accounting, as Plaintiff only alleges that she "is not required to state with specificity the actual damages of Plaintiffs due to this violation at this stage in the lawsuit." (*Id.* at 16; Compl. ¶ 73.)

Plaintiff does not address Defendants' challenge to her accounting and RESPA cause of action. Plaintiff's failure to respond shall be deemed consent to dismissal of this claim. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (finding that plaintiff's failure to address her UCL claim in her opposition to the motion to dismiss "constitutes abandonment of the claim"). Even considering Plaintiff's claim on the merits, Plaintiff has not alleged that she sent Fay a qualified written request; she alleges only that she requested a detailed accounting calculation and summary of the payoff balance on several occasions in 2015, but does not specify if any of these requests were sent to Fay, who only became the loan servicer in November 2015, or if these requests were only sent to Chase. (Compl. ¶ 30.) Plaintiff has also failed to plead pecuniary harm resulting from the alleged violation of RESPA, as a plaintiff bringing a cause of action for failure to respond to a qualified written request must allege actual damages. *See Williams v. Wells Fargo Bank, N.A., Inc.*, C 10-00399 JF (HRL), 2010 WL 1463521, at *8-9 (N.D. Cal. Apr. 13, 2010) (listing cases finding that conclusory allegations of damages were not sufficient); *Allen v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010) (plaintiff must "point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA"). Because this is Plaintiff's first complaint, Plaintiff's RESPA claim is dismissed without prejudice. Future failures to address particular claims in opposition to a motion to dismiss will result in dismissal of that claim with prejudice.[3]

---

[3] Several courts in this district have dismissed with prejudice claims that the plaintiff failed to address in an opposition to a motion to dismiss. *See Moore*, 73 F. Spp. 3d at 1205; *Homsy v. Bank of Am, N.A.*, No. C 13-1608 LB, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) ("In instances where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiff's complaint with leave to amend. Plaintiff has thirty (30) days from the date of this order to file a First Amended Complaint.

IT IS SO ORDERED.

Dated: October 6, 2016

KANDIS A. WESTMORE
United States Magistrate Judge

---

that claim, courts generally dismiss it with prejudice"), *Green Desert Oil Grp. v. BP W. Coast Prods.*, No. C 11-2087 CRB, 2012 WL 555045, at *2 (N.D. Cal. Feb. 21, 2012) (dismissing claims with prejudice that the plaintiffs did not defend in their opposition to a motion to dismiss).

13